IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00302-GPG-KAS

STATE NATIONAL INSURANCE COMPANY,

    Plaintiff,

v.

COLONY INSURANCE COMPANY,
HARTFORD CASUALTY INSURANCE COMPANY,
PELEUS INSURANCE COMPANY,
COUNTRY MUTUAL INSURANCE COMPANY,
UNITED FIRE & CASUALTY COMPANY, doing business as United Fire Group, and
SCOTTSDALE INSURANCE COMPANY, also known as Nationwide E&S Specialty Company,

    Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant Addison Insurance Company's[1] ("Addison's") **Motion to Bifurcate the Duty to Defend from the Bad Faith Claims** [#65] (the "Motion"). Plaintiff State National Insurance Company ("SNIC") filed a Response [#72] in opposition to the Motion [#65] and Defendant Addison filed a Reply [#80]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Motion [#65] is **DENIED**.[2]

---

[1] According to its counsel, Addison Insurance Company has been "improperly sued as United Fire & Casualty Company, d/b/a United Fire Group," although no party has filed a motion to correct its name on the docket. See Motion [#65] at 1; Scheduling Order [#51] at 2 (identifying "Defendant, Addison Insurance Company (sued as United Fire & Casualty Company d/b/a United Fire Group"). However, because both parties' briefing on the Motion [#65] refers to the entity as "Addison," the Court will do the same.

[2] The Motion [#65] has been referred to the undersigned. See Memorandum [#67].

## I. Background

On January 31, 2024, Plaintiff SNIC filed this breach of contract and bad faith action to recover defense costs and settlement funds that it tendered on behalf of its insured, Kinsman Construction, Inc., ("Kinsman") in a related, underlying lawsuit filed in Jefferson County District Court (the "Underlying Litigation"). *See Compl.* [#1], ¶¶ 18, 23. As the general contractor of a home construction project, Kinsman had executed agreements with various vendors and subcontractors ("Subcontractors") that required the Subcontractors to procure and maintain general liability insurance coverage naming Kinsman as an additional insured. *Id.*, ¶ 15. Defendants are the Subcontractors' insurers. *Id.*, ¶ 17.

When the homeowners sued Kinsman in state court related to alleged construction defects and damage to the property, Kinsman tendered its defense and indemnity to Defendants, but no insurer Defendant agreed to defend or indemnify Kinsman. *Id.*, ¶¶ 19-20. As a result, SNIC defended Kinsman in the Underlying Litigation at its own expense and paid the entire settlement amount without contribution from any Defendant. *Id.*, ¶ 23. Kinsman transferred and assigned Plaintiff its claims arising from Defendants' alleged failure to defend or indemnify Kinsman in the Underlying Litigation. *Id.*, ¶ 24. Plaintiff alleges that each Defendant owed a contractual duty, under its respective insurance policy, to participate in Kinsman's defense and indemnity, absent a court order declaring that they owed no obligation. *Id.*, ¶ 28. Plaintiff sued Defendants for breach of contract, statutory bad faith in violation of Colo. Rev. Stat. § 10-3-1115, and common law bad faith under Colorado law. *Id.*, ¶¶ 26-41. Since filing its Complaint [#1], Plaintiff has settled with

and dismissed several of the Subcontractors' insurers.[3] Defendant Addison now asks the Court to bifurcate Plaintiff SNIC's breach of contract claim from its bad faith claims. *Motion* [#65] at 1.

## II. Legal Standard

Pursuant to Fed. R. Civ. P. 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." District courts have "broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused." *Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1011 (10th Cir. 1993) (quoting *Eastridge Dev. Co. v. Halpert Assocs., Inc.*, 853 F.2d 772, 781 (10th Cir. 1988)) (internal quotation marks omitted).

When considering whether to bifurcate, courts in this Circuit consider three factors: "First, will there be convenience and economy? Second, are the issues separable? Third, will bifurcation be essentially unfair to one side?" *Bonham v. GEICO Cas. Co.*, No. 15-cv-2109-MEH, 2016 WL 26513, at *1 (D. Colo. Jan. 4, 2016) (citing *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964-65 (10th Cir. 1993)). "[T]he movant bears the burden regarding a motion to bifurcate—a burden, in many cases, being difficult to surmount." *Anderson v. Am. Nat'l Prop. & Cas. Co.*, No. 17-cv-03016-REB-KMT, 2018 WL 10609649,

---

[3] To date, Plaintiff has dismissed AIX Specialty Insurance Company and Preferred Contractors Insurance Risk Retention Group, LLC. *See Stipulations of Dismissal* [#74, #75]. Plaintiff has settled with Defendants Peleus Insurance Company, Scottsdale Insurance Company, and Hartford Casualty Insurance Company. *See Notices of Settlement* [#63, #70, #73]. If the settled parties are dismissed, only Defendants Colony Insurance Company, Country Mutual Insurance Company, and Addison Insurance Company (named as United Fire & Casualty Company) will remain.

at *2 (D. Colo. Feb. 9, 2018) (citing *The Marianist Province of the United States, v. ACE USA*, No. 08-cv-01760-WYD-MEH, 2010 WL 2681760, at *1 (D. Colo. July 2, 2010) (indicating that "severance is [not] the norm or even a common occurrence")); *see also Robinson v. Charter Oak Fire Ins. Co.*, No. 20-cv-01534-PAB-MEH, 2020 WL 9432890, at *1 (D. Colo. Oct. 26, 2020) (denying motion to bifurcate because "[p]ostponing discovery, even in the hopes that some of it may never be had, will be inconvenient and uneconomical from a judicial resources perspective; although the claims are distinct, they are part of a common nucleus of operative facts[.]").

In this District, the movant's burden is even more difficult to carry in a run-of-the-mill insurance dispute. "[T]he weight of authority in this District favors the denial of bifurcation in standard insurance cases where the contractual and extracontractual issues sufficiently overlap to justify holding a single trial." *Pacheco v. State Farm Mut. Auto Ins. Co.*, No. 23-cv-00305-NYW-SBP, 2024 WL 1239942, at *3 (D. Colo. Mar. 22, 2024) (collecting cases). After all, "[c]ourts in this District routinely preside over insurance trials in which contractual and extracontractual claims are heard together." *Id.* The reluctance to bifurcate stems from the fact that "a bad faith claim does not necessarily depend on the existence of coverage under Colorado law. That does not in any way presuppose that a bad faith claim could survive the postulated dismissal of a duty to defend claim—but it could." *Salls v. Secura Ins.*, No. 18-cv-00370-MSK-GPG, 2019 WL 1228068, at *3 (D. Colo. Mar. 16, 2019); *see also Colo. Cas. Ins. Co. v. Infinity Land Corp.*, No. 12-cv-02748-WYD-BNB, 2013 WL 5420689, at *2 (D. Colo. Sept. 27, 2013) (finding no compelling reason for bifurcation and acknowledging insured's argument that "a resolution of the duty to defend issue would not be dispositive of the bad faith counterclaims"); *but see Am.*

4

*Fam. Mut. Ins. Co., Inc. v. Haslam*, No. 09-cv-00724-DME-MEH, 2011 WL 1042284, at *1-*2 (D. Colo. Mar. 22, 2011) (bifurcating insurance claims from cross-claims involving loan agreements for an insured property while noting that "bifurcation is the exception, not the rule").

### III. Analysis

Defendant Addison argues that bifurcation would be appropriate because SNIC's breach of contract claim will be decided as a matter of law; and because bifurcation would promote judicial efficiency and no party would be prejudiced. *See Motion* [#65] at 4-8. In its Response [#72], Plaintiff points to the nearly uniform weight of cases in the District of Colorado that have refused to bifurcate an insurer's duty to defend from bad faith claims absent compelling circumstances. *Response* [#72] at 6-9. Plaintiff further argues that Addison's coverage defense relies in part on notice of tender, so the coverage issue will require fact discovery before it can be decided, and even if summary judgment is granted as to coverage, that may not dispose of the bad faith claims. *Id.* at 9-11. Finally, Plaintiff argues that efficiency and convenience do not favor bifurcation. *Id.* at 11-12.

Bifurcation is improper if the issues are inseparable. *See Leone v. Owsley*, No. 12-cv-02961-PAB-KMT, 2016 WL 9735826, at *1 (D. Colo. June 23, 2016). At least two cases in this District have considered whether to bifurcate duty-to-defend claims from bad faith claims. In *Colorado Casualty Insurance Company v. Infinity Land Corporation*, the court declined to bifurcate, concluding that both claims "derive[d] from the same occurrence, the Underlying Litigation, and whether there exist[ed] a duty to defend and indemnify." *Colo. Cas. Ins. Co.*, 2013 WL 5420689, at *1-*2. The court noted that "discovery [on the coverage and bad faith issues] will [likely] concern much of the same

5

related evidence and will involve deposing many of the same individuals about events that occurred in the same or reasonably close time period." *Id.* at *2. Likewise, in *Salls v. Secura Insurance*, the court declined to bifurcate a duty-to-defend claim from a bad faith claim because it was uncertain whether resolution of the duty-to-defend issue would truly end the litigation. *Salls*, 2019 WL 1228068, at *3 (finding that "the speculative potential savings of bifurcation are outweighed by the costs of delay" where "[i]t is likely that discovery will concern some of the same matters anyway").

Defendant cites cases from other jurisdictions where duty to defend and bad faith claims were bifurcated, but it does not identify even one analogous case in this District, and the Court found none in its own research.[4] *See Motion* [#65] at 6-7. Defendant's in-District citations to *Haslam* and *Giertz* are inapposite, as both cases involved different, separable issues. *Id.* at 6 (citing *Am. Family Mut. Ins. Co., Inc. v. Haslam*, No. 09-cv-00724-DME-MEH, 2011 WL 1042284 (D. Colo. Mar. 22, 2011); *Giertz v. State Farm Mut. Auto Ins. Co.*, No. 18-cv-01781-DDD-SKC, 2020 WL 13749049 (D. Colo. Oct. 1, 2020)). In *Haslam*, the insurer sought a declaratory judgment that a homeowners insurance policy

---

[4] As both *Colorado Casualty* and *Salls* noted, Colorado law is somewhat unique because "Colorado recognizes the viability of a claim of bad faith even if the express terms of the contract have been honored by the insurer." *Colo. Cas. Ins. Co.*, 2013 WL 5420689, at *2 (quoting *Dunn v. Am. Family Ins.*, 251 P.3d 1232, 1235 (Colo. App. 2010)); *Salls*, 2019 WL 1228068, at *3 (similar). This is not the law in every state, which is why courts in Mississippi, Kentucky, and New Mexico, for example, routinely bifurcate insurance coverage and bad faith claims. *See O'Malley v. U.S. Fid. & Guar. Co.*, 776 F.2d 494, 500-01 (5th Cir. 1985) (holding that bifurcation was proper because Mississippi law does not "allow[] an insured to recover against an insurance company for alleged bad faith in handling a claim if the insured does not prevail on the issue of coverage"); *Live Nation Worldwide, Inc. v. Secura Ins.*, 298 F. Supp. 3d 1032, 1035, 1036 (W.D. Ky. 2018) (observing that Kentucky courts frequently bifurcate coverage and bad faith claims because a finding "that [the insurer] did not owe [the insured] a full defense and indemnification would likely foreclose the bad-faith claim against it."); *Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 868 P.2d 1307, 1313 (N.M. Ct. App. 1994) (stating that, under New Mexico law, "bad faith failure to pay in the insurance context does not arise unless there is a contractual duty to pay under the policy.") (internal citation omitted).

issued to the insured was void due to fraud and misrepresentation. *Haslam*, 2011 WL 1042284, at *1. When a fire destroyed the property, entities which had loan agreements with the insured (but whom the insured had not named as mortgagees or loss payees in the applicable policy) filed cross-claims alleging breaches of the loan agreements. *Haslam*, 2011 WL 1042284, at *1. The court bifurcated the cross-claims because it found that issues involving the insurance policy were separable from the claims concerning the loan agreements. *Id.* at *2. In *Giertz*, the court bifurcated the insured's breach of contract and bad faith claims because the insured may have been at fault for the accident, which would have defeated both potential claims. *Giertz*, 2020 WL 13749049, at *1 (citing *Borjas v. State Farm Mut. Auto Ins. Co.*, 33 P.3d 1265, 1269 (Colo. App. 2001)). Neither case involved an insurer's duty to defend.

Here, as in *Colorado Casualty* and *Salls*, the issues of duty to defend and bad faith are inseparable. Defendant Addison admits the potential need for some fact discovery regarding the duty to defend issue, namely "whether and when the alleged tenders of defense were made and if the same were actually received by the putative additional insured carriers." *Motion* [#65] at 5 n.3. Plaintiff agrees and notes that "the issues of notice and lack of notice implicate the systems in place by the remaining Defendants to receive notice and the adequacy of those systems." *Response* [#72] at 10. Thus, Plaintiff and Defendant Addison agree that whether the insurer Defendants owed a duty to defend is not a purely legal question of contract interpretation—rather, it is a potentially fact-intensive issue as well. Resolving it likely will require depositions or written discovery regarding the claim file, assigned adjuster(s), and the insurers' policies and procedures—the exact same discovery that would be central to Plaintiff's bad faith claim. *Cf. Salls*,

7

2019 WL 1228068, at *3 (noting that "there would be unnecessary duplication of effort by bifurcation" of bad faith from duty to defend, regarding depositions, paper discovery, and interrogatories); *Colo. Cas. Ins. Co.*, 2013 WL 5420689, at *2 ("It is likely that discovery will concern much of the same related evidence and will involve deposing many of the same individuals about events that occurred in the same or reasonably close time period."). The Court finds that Plaintiff's claims are not separable, and bifurcation is therefore inappropriate.

For the same reasons, the Court finds that bifurcation of Plaintiff's breach of contract and bad faith claims would not necessarily be more convenient or economical. Resolution of the duty to defend issue—even in Defendant Addison's favor—may not obviate the need for a trial on the alleged bad faith. As Plaintiff argues, "if the remaining Defendants (or their agents) ignored Kinsman's tender, even if there were no coverage under the Addison policy, there could still be bad faith on the part of Addison pursuant to Colorado law." *Response* [#72]. Thus, because Plaintiff's bad faith claims could survive dismissal, bifurcation offers no convenience or efficiency.

Finally, Plaintiff briefly suggests that it will be prejudiced if its claims are bifurcated, because "the parties would have lost time in discovery and [would] very likely require a new/amended Scheduling Order." *Response* [#72] at 11. The Court agrees and finds that "there is a risk of prejudice . . . in having [Plaintiff's] claims 'sit dormant' while the [duty to defend] claims are resolved." *Colo. Cas. Ins. Co.*, 2013 WL 5420689, at *3; *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) (noting that plaintiffs have a presumptive interest in the expeditious resolution of their claims).

In sum, Defendant Addison has not carried its burden regarding its motion to bifurcate. The Court does not find that the insurer Defendants' alleged duty to defend is separable from their alleged bad faith. Nor is bifurcation likely to avoid duplicating discovery efforts and expenses. Finally, bifurcation would prejudice Plaintiff by delaying resolution of its claims. Therefore, in its discretion, the Court declines to bifurcate SNIC's claims.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#65] is **DENIED**.

Dated: July 23, 2024            BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge

9